**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gilbert Gonzales Olivas, | No. CV-16-00061-TUC-RM |
| Petitioner, | **ORDER** |
| v. | |
| Attorney General of the State of Arizona, et al., | |
| Respondents. | |

On January 20, 2016, Petitioner Gilbert Gonzales Olivas, who is confined in the Arizona State Prison Complex-Lewis, filed a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) Respondents filed an Answer on July 11, 2016, and Petitioner filed a Reply on August 11, 2016. (Docs. 16, 23.) On July 9, 2018, Magistrate Judge Bernardo P. Velasco issued a Report and Recommendation, recommending that Grounds One through Four be denied, that Ground Five be partially denied, and that an evidentiary hearing be held on the remaining part of Ground Five. (Doc. 35.) On July 23, 2018, Respondents filed Objections to the Report and Recommendation. (Doc. 36.) On August 6, 2018, Petitioner responded to Respondents' Objections and filed his own untimely Objections. (Doc. 37.) Respondents responded to Petitioner's Objections on August 15, 2018. (Doc. 38.)

**I.  Factual and Procedural Background**

   **A.  The Offense**

Following a jury trial, Petitioner was convicted of two counts of aggravated

assault with a deadly weapon, theft of a means of transportation, armed robbery, and aggravated robbery. (Doc. 16-1 at 3.)[1] He was sentenced to a combination of concurrent and consecutive sentences totaling 35 years.[2] (Doc. 34-2 at 14, 16–17.) The presentence report summarizes the offense as follows:

> On July 14, 2010 at 1:03 a.m. a large number of Tucson Police Department (TPD) officers arrived at a park located in the 200 block of East Irvington Road to investigate an attempted carjacking. Mr. Jose Carmago [sic] and his girlfriend Ismar [sic] Aguayo, the victims, told them that three individuals had taken their car, one armed with a handgun. The couple had been sitting the [sic] park when they were approached by the suspects who stopped to talk to them. One, later identified as defendant Peter Flores, pulled out a handgun and pointed it at Mr. Carmargo [sic]. Entering the stolen vehicle, the three men left the area.
>
> Using information supplied by the victims, other TPD officers located the abandoned vehicle nearby. A canine unit was brought to the scene and two suspects, Flores and defendant Gilbert Olivas, were located hiding outside a laundry room in the 4800 block of South Cherry Avenue. The third person was never identified. Transported to the scene, Ms. Aguayo identified both men, but Mr. Carmago [sic] could not make a positive identification. The officers also found a handgun in the front yard of a nearby house.

(Doc. 16-1 at 7.) The TPD interviewed Mr. Camargo on the night of the incident. (Doc. 1-4 at 5–13.) Mr. Camargo reported that he and Ms. Aguayo were sitting in the park when three individuals approached. (*Id.* at 5.) According to Mr. Camargo, a dark-complexioned male pulled out a handgun, pointed it at Mr. Camargo, and demanded Mr. Camargo's vehicle, while a second, light-complexioned male stood immediately behind the gunman. (*Id.* at 7–10.) Mr. Camargo stated he ran away to a nearby house (leaving Ms. Aguayo) and called 911. (*Id.* at 10.) The transcript of that call shows that Mr. Camargo told the operator he had been pulled out of his car at gunpoint. (Doc. 1-5 at 2.)

Mr. Camargo eventually passed the phone to Ms. Aguayo, whom he saw walking down the street a short while later. (*Id.* at 5–6.) Ms. Aguayo told the operator that the

---

[1] All record citations refer to the page numbers generated by the Court's electronic filing system.

[2] Respondents erroneously state, based on a miscalculation made by the Arizona Court of Appeals, that Petitioner was sentenced to a total of 43 years. The sentencing transcript shows that Petitioner was actually sentenced to 35 years.

- 2 -

individuals allowed her to retrieve personal items from the vehicle and let her go because the keys were inside. (*Id.* at 6.) During an interview with TPD later that night, Ms. Aguayo told officers that, just prior to Flores pulling the handgun, Petitioner told Flores, "just do it, just do it" and "yea, yea, yea." (Doc. 1-4 at 16.)

### C. Appeal and Post-Conviction Proceedings

Petitioner timely appealed his convictions and sentences. (Doc. 16-1 at 3.) Petitioner chose to represent himself and waived his right to appellate counsel. (*Id.*) His direct appeal was dismissed on April 12, 2013, after he failed to timely file an opening brief despite being granted several extensions of time to do so. (*Id.*; Doc. 1-3 at 4.)[3]

On September 18, 2012, prior to the dismissal of his direct appeal, Petitioner filed a pro se notice of post-conviction relief ("PCR"). (Doc 16-1 at 13–16.) The PCR proceeding was stayed pending resolution of Petitioner's direct appeal. (*Id.* at 18.) Following the dismissal of Petitioner's direct appeal, the PCR court appointed counsel for Petitioner, who filed a PCR petition on Petitioner's behalf. (*Id.* at 20.) Counsel later withdrew upon Petitioner's request, and on March 17, 2014, Petitioner filed a pro se amended PCR petition, advancing his former counsel's arguments plus new, additional claims for relief. (Doc. 1-1 at 12–13; Doc. 1-5 at 9.) The PCR court summarized Petitioner's claims as follows:

> With regard to his trial, he argues that the evidence was insufficient to convict him on several counts; that the State withheld clearly exculpatory evidence; that he was denied his right to be heard on a Motion to Withdraw Counsel; and that evidence from another case was improperly introduced in this case. As to his sentencing, he argues that the sentencing on Count Nine [aggravated robbery] was improper, because that crime was treated as a dangerous nature offense; that his sentences in Counts One [aggravated assault with a deadly weapon], Two [same], Eight [armed robbery], and Nine were incorrectly enhanced by two prior dangerous convictions when he only had one; and that the imposition of a Criminal Restitution Order

---

[3] Petitioner asserts that the extensions were granted to his counsel, not to him, and that his counsel's requests for extensions evidenced a lack of interest in his case. (Doc. 1-1 at 8.) He explains that is why he elected to proceed pro se on his direct appeal. (*Id.*) Petitioner further asserts that he missed the filing deadline through no fault of his own, because a riot broke out the day before the deadline, and he was placed in lockdown for 30 days and had his brief confiscated. (*Id.* at 7.)

> was illegal. Finally, he argues that his trial counsel was ineffective at both trial and sentencing and that he was denied his right to a direct appeal.

(Doc. 16-1 at 25–26.)

The PCR court rejected Petitioner's insufficiency-of-evidence claim, finding that Petitioner's verbal encouragement to Flores met the definition of "accomplice" under Ariz. Rev. Stat. § 13-301. (*Id.* at 27.) The PCR court rejected Petitioner's claim that his counsel was ineffective by stipulating to the admission of Mr. Camargo's 911 call, since Petitioner failed to support his assertion that the 911 call contained false information and, even if the call were misleading, that would not establish that counsel was ineffective. (*Id.*) The PCR court also rejected Petitioner's claim that his sentences for aggravated assault, armed robbery, and aggravated robbery were illegally enhanced, since Petitioner's "historical dangerous felonies" stemmed from two incidents, not one; thus, the PCR court explained, Petitioner's counsel was not ineffective by failing to object to the enhancement. (*Id.* at 29–30.)

Petitioner did obtain some relief. The PCR court ruled that since the jury did not find that Petitioner's aggravated robbery conviction was "dangerous nature," Petitioner's sentence as a dangerous offender was illegal. (*Id.* at 28–29.) The PCR court also found that the trial court erred by imposing a criminal restitution order at the sentencing hearing. (*Id.* at 30.) The Court vacated the restitution order and ordered that Petitioner be resentenced on the aggravated robbery conviction. (*Id.* at 29–30.)

Petitioner appealed the partial denial of his PCR petition. (*Id.* at 3.) The Arizona Court of Appeals refused to address the merits of several of Petitioner's claims of trial error, finding that Petitioner was precluded from raising the claims in PCR proceedings because he failed to raise them on appeal. (*Id.* at 4.) The appellate court did analyze Petitioner's insufficiency-of-evidence claim, "agree[ing] with the trial court that sufficient evidence supported his convictions for the robberies and aggravated assaults." (*Id.*) The appellate court also found that Petitioner's counsel was not deficient in stipulating to admission of the 911 call, since Petitioner identified no legal basis for

objecting to the call's admission, nor did Petitioner explain how exclusion of the recording would have changed the verdict. (*Id.*) Petitioner sought review in the Arizona Supreme Court, but was denied review on September 16, 2015. (*Id.* at 35.)

At the resentencing hearing, the trial court imposed a presumptive 11.25-year term of imprisonment for Petitioner's aggravated robbery conviction. (*Id.* at 32.) Petitioner appealed his new sentence, where his appointed counsel filed an *Anders* brief stating that a review of the record had revealed no arguable issue for appeal. (*Id.*) Finding no fundamental, reversible error, the Arizona Court of Appeals affirmed the sentence in a memorandum decision filed on March 2, 2015. (*Id.*)

On June 10, 2015, Petitioner filed a second PCR notice. (*Id.* at 41.) In the second PCR petition, Petitioner argued both that his trial and PCR counsel were ineffective. (*Id.* at 21–22.) The PCR court found that Petitioner had waived his claims regarding trial counsel by not raising them in the first PCR proceeding. (*Id.* at 22.) The PCR court found Petitioner's claim regarding PCR counsel meritless because Petitioner had chosen to proceed pro se and thus was not represented. (*Id.*) Petitioner was denied review in both the Arizona Court of Appeals and Arizona Supreme Court. (Doc. 31-1.)

### D. The § 2254 Petition

Petitioner filed the Petition on January 20, 2016, raising five grounds for relief. (Doc. 1.) In Ground One, he argues he was denied a fair trial in violation of his federal due process rights because no reasonable factfinder could have found him guilty of accomplice liability on the robbery, aggravated robbery, or aggravated assault charges. (Doc. 1-1 at 19.) Pointing to the transcript of TPD's interview with Mr. Camargo, which was not introduced at trial, Petitioner emphasizes that Mr. Camargo *did not* state that Petitioner took any action towards either victim. (*Id.* at 20.) Petitioner further contends that Ms. Aguayo's statement that he had encouraged Flores was inadmissible hearsay and should not have been admitted at trial through the interviewing TPD officer. (*Id.* at 22.) With the benefit of Mr. Camargo's recollection and the exclusion of Ms. Aguayo's statement, Petitioner argues, there would have been no evidence supporting accomplice

liability, and thus no reasonable jury could have convicted him. (*See id.* at 22–23.)

In Ground Two, Petitioner argues that he was denied a fair trial in violation of his federal due process rights because he was convicted of accomplice liability on proof less than beyond a reasonable doubt. (*Id.* at 24.) He bases this claim on the following premises: because Ms. Aguayo testified she did not know she was being robbed, Petitioner could not have robbed her; Petitioner could not have robbed Mr. Camargo because the vehicle keys (not the vehicle itself) were the target of the robbery, and the keys were in the vehicle, not on Mr. Camargo's person; the vehicle transferred from Mr. Camargo's possession to Ms. Aguayo's when Mr. Camargo fled, and thus Petitioner could not have robbed Mr. Camargo; and Petitioner could not have robbed Ms. Aguayo because a new "incident" began once Mr. Camargo fled, and there was no threat or use of force against Ms. Aguayo during the second incident. (*See id.* at 27–32.) Under Petitioner's view of the case, no reasonable jury could have found all elements of the charged offenses. (*Id.* at 33.)

In Ground Three, Petitioner argues that his trial counsel rendered ineffective assistance by stipulating to the admission of the transcript of Mr. Camargo's 911 call. (*Id.* at 34.) Petitioner contends the prosecution knew it could not establish that Petitioner took the vehicle from Mr. Camargo's possession, since Mr. Camargo had fled, so the prosecution relied on Mr. Camargo's statement to the 911 operator that he had been pulled out of the vehicle at gunpoint. (*Id.* at 34–36.) Thus, Petitioner argues, his counsel prejudicially acquiesced in the prosecution's use of misleading evidence. (*Id.* at 37.)

In Ground Four, Petitioner argues that his trial counsel rendered ineffective assistance by failing to introduce exculpatory evidence at trial. (*Id.* at 37.) He contends that the transcript of TPD's interview with Mr. Camargo directly refutes the prosecution's theory that Petitioner "directly participated" in the robbery, because Mr. Camargo told TPD officers only that Flores had pulled a handgun and demanded the vehicle. (*Id.* at 38.) Conspicuously absent from Mr. Camargo's recollection, Petitioner says, is any indication that Petitioner verbally encouraged Flores to commit the crime.

(*Id.*) Petitioner argues that the transcript could have been used to impeach the officer who testified as to Ms. Aguayo's hearsay statement (that Petitioner encouraged Flores), and since Mr. Camargo refused to cooperate at trial, there would have been no evidence that Petitioner "directly participated."[4] (*Id.* at 38–39.) Thus, he argues, his counsel was prejudicially ineffective by not introducing the transcript. (*Id.* at 41.)

In Ground Five, Petitioner argues that his trial counsel rendered ineffective assistance by allowing Petitioner to receive illegally enhanced sentences. (*Id.* at 42.) During the pendency of the vehicle-theft case, Petitioner entered into a plea agreement in a separate case and pled guilty to resisting arrest. (*Id.*) Pursuant to the plea agreement, Petitioner admitted that certain prior convictions were "dangerous nature" for purposes of sentencing in the vehicle-theft case. (*Id.* at 42–43.) Those prior convictions included various dangerous felonies that were treated as a single conviction for sentencing purposes, and escape from custody, which is a non-dangerous felony. (*Id.* at 43–44.)[5] Pursuant to the plea agreement, the escape conviction was treated as a second "dangerous nature" offense, and Petitioner's sentence was enhanced based on two dangerous felony

---

[4] It appears that Petitioner convinced Mr. Camargo to become uncooperative. At the sentencing hearing, the prosecutor explained:

> I would ask the Court to consider in terms of weighing mitigation the efforts Mr. Olivas made in this case to suppress the testimony of Jose and Isamar. Again the Court having heard the trial, the Court knows that there was a very, very drastic change in the stories Jose and Isamar told by the time they got to trial. We presented extensive evidence showing that Mr. Olivas had in essence procured that testimony through his actions from jail.
>
> . . . . I think certainly influences the amount of mitigation, the fact that Mr. Olivas spent so much time and effort and in fact money trying to change Jose and Isamar from their stories that they had been victimized.

(*See* Doc. 34-2 at 6–7.)

[5] Petitioner was convicted of armed robbery, first-degree burglary, aggravated assault, and unlawful use of transportation, stemming from an incident where he carjacked a taxi driver at gunpoint. (Doc. 1-1 at 42–43.) Five hours after the carjacking, Petitioner was arrested when officers saw him walking near the scene of the crime. (*Id.* at 43.) Petitioner was convicted with escape from custody after he broke free and attempted to flee. (*Id.* at 42–43.) For sentencing enhancement purposes, the carjacking convictions were treated as a single conviction. *See* Ariz. Rev. Stat. § 13-704(J). The escape, having occurred hours later, was committed on a different "occasion" and thus could be counted separately. *See id.* In Ground Five, Petitioner alternatively argues that the escape should be counted with the carjacking convictions. (*See* Doc. 1-1 at 44–45.) This argument is meritless. (*See* Doc. 16-1 at 29–30.)

- 7 -

convictions. (*Id.* at 45.) He argues his counsel was ineffective by allowing him to admit that the escape was a dangerous felony and by letting the trial court enhance his sentence without proof of two predicate convictions. (*Id.* at 45–46.)

## II. Standard of Review

A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations" made by a magistrate judge. 28 U.S.C. § 636(b)(1). The district judge must "make a de novo determination of those portions" of the magistrate judge's "report or specified proposed findings or recommendations to which objection is made." *Id.* The advisory committee's notes to Rule 72(b) of the Federal Rules of Civil Procedure state that, "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" of a magistrate judge. Fed. R. Civ. P. 72(b) advisory committee's note to 1983 addition; *see also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) ("If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error."); *Prior v. Ryan*, CV 10-225-TUC-RCC, 2012 WL 1344286, at *1 (D. Ariz. Apr. 18, 2012) (reviewing for clear error unobjected-to portions of Report and Recommendation).

Because Petitioner's § 2254 Petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this case is governed by AEDPA. *See Patterson v. Stewart*, 251 F.3d 1243, 1245 (9th Cir. 2001).

## III. Discussion[6]

### A. Grounds Three, Four, and Five

Judge Velasco recommended that Grounds Three and Four be denied in their entirety, and that Ground Five be denied to the extent Petitioner alleges ineffective assistance of counsel during sentencing for his aggravated robbery conviction. (Doc. 35

---

[6] With one exception, Respondents do not dispute that Petitioner's claims are cognizable, timely, and not procedurally defaulted. (*See* Doc. 16 at 3; Doc. 26 at 3.) Respondents argue that Ground Five is procedurally defaulted as it pertains to sentencing on Petitioner's aggravated robbery conviction. (Doc. 26 at 3.) That claim will be dismissed on different grounds.

at 22.) Judge Velasco reasoned that the state court resolution of Petitioner's claims was neither contrary to clearly established federal law nor based on an unreasonable determination of the facts. (*Id.* at 17–19.) Neither party objected to Judge Velasco's recommendation concerning these Grounds. The Court has reviewed Judge Velasco's reasoning, the parties' briefs, and the record for clear error and has found none. This part of Judge Velasco's recommendation will be fully adopted.

### B. Grounds One and Two

#### 1. Standard of Review

"The starting point for cases subject to § 2254(d)(1) is to identify the 'clearly established Federal law, as determined by the Supreme Court of the United States' that governs the habeas petitioner's claims." *Marshall v. Rodgers*, 569 U.S. 58, 61 (2013) (per curiam) (quoting § 2254(d)(1)). In Ground One, Petitioner alleges he was denied a fair trial in violation of his federal due process rights because there was insufficient evidence to establish his guilt as an accomplice beyond a reasonable doubt. In Ground Two, Petitioner alleges he was denied a fair trial in violation of his federal due process rights because the jury convicted him as an accomplice on proof less than beyond a reasonable doubt. Both Grounds are insufficiency-of-evidence claims; the "clearly established Federal law" governing such claims is set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Garcia v. Carey*, 395 F.3d 1099, 1102 (9th Cir. 2005). "*Jackson* says that evidence is sufficient to support a conviction so long as 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (per curiam) (emphasis in original) (quoting *Jackson*, 443 U.S. at 319).

For purposes of review under § 2254(d), the district court looks to the "state court's last reasoned decision," applying "AEDPA deference [only] to claims that were 'adjudicated on the merits in State court proceedings.'" *Echavarria v. Filson*, 896 F.3d 1118, 1129 (9th Cir. 2018) (quoting § 2254(d)). District courts owe two layers of

deference when a state court adjudicates a petitioner's *Jackson* claim on the merits: first, under *Jackson*, which requires deference to a guilty verdict unless "no rational trier of fact" could reach the same verdict; and second, under AEDPA, which requires deference to the state court adjudication unless it is "objectively unreasonable." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (citations omitted); *see Boyer v. Chappell*, 793 F.3d 1092, 1101 (9th Cir. 2015).

Here, the Arizona Court of Appeals adopted the PCR court's reasoning without additional analysis or comment; thus, the PCR court issued the last reasoned decision on Petitioner's *Jackson* claims. (*See* Doc. 16-1 at 4.) The PCR court rejected Petitioner's claims on the merits, explaining that "the evidence proved that [Petitioner] was at the scene with a co-defendant and . . . verbally encouraged the co-defendant to commit various criminal actions," and that such conduct falls within the definition of "accomplice" under Arizona law. (Doc. 16-1 at 27 (citing Ariz. Rev. Stat. § 13-301(1)–(2)).) Because Petitioner's claims were adjudicated on the merits, the Court owes the state court finding "double deference . . . under *Jackson* and AEDPA." *Ngo v. Giurbino*, 651 F.3d 1112, 1115 (9th Cir. 2011).

### 2. Analysis

"Under *Jackson*, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of law." *Coleman*, 566 U.S. at 655 (internal citation and quotation marks omitted). Petitioner claims there was insufficient evidence to convict him as an accomplice. Under Arizona law, an accomplice is someone who "[s]olicits or commands another person to commit the offense" or "[a]ids, counsels, agrees to aid or attempts to aid another person in planning or committing an offense." Ariz. Rev. Stat. § 13-301(1)–(2). Furthermore, "[a] person is criminally accountable for the conduct of another if . . . [t]he person is an accomplice of such other person in the commission of an offense including any offense that is a natural and probable or reasonably foreseeable consequence of the offense for which the person was

an accomplice." *Id.* § 13-303(A)(3). Because the evidence was sufficient to convict Petitioner as an accomplice, the PCR court's decision was neither contrary to nor an objectively unreasonable application of clearly established federal law as set forth in *Jackson*.

The relevant evidence presented at trial consisted of the testimony of a TPD officer who responded to the scene and interviewed Mr. Camargo, Ms. Aguayo, Flores, and Petitioner. (*See* Doc. 1-4 at 17.) The officer testified to the following statements made during those interviews: just prior to Flores pulling a handgun, Petitioner said "just do it, just do it" and "yea, yea, yea"; Flores pulled a handgun, loaded a bullet into the chamber, pointed it at Mr. Camargo, and demanded the vehicle keys; Petitioner also demanded the vehicle keys; both victims tried to run, but Ms. Aguayo returned when Petitioner yelled to stop and return; the three individuals drove off in Mr. Camargo's vehicle; Petitioner was apprehended with Flores a short while later, after abandoning the vehicle; and the handgun was found just outside the abandoned vehicle. (*Id.* at 16–17.) There was also "extensive evidence" that Petitioner went to great lengths to influence the victims' testimony in his favor. (*See* Doc. 34-2 at 6–7.)

The foregoing evidence convinced Petitioner's jury of his guilt; thus, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 566 U.S. at 656. Viewing the evidence in the light most favorable to the prosecution, the jury's verdict is plainly rational and therefore is entitled to deference under *Jackson*. *Id.* at 651. Based on the evidence presented at trial, a rational factfinder could infer that Petitioner knew Flores was armed and intended to steal Mr. Camargo's vehicle, that Petitioner intended to assist Flores in that offense— and, accordingly, that Petitioner was an accomplice. *See id.* at 656–57 (finding evidence sufficient to convict petitioner as accomplice).

The PCR court agreed with the jury's verdict, "and that determination in turn is entitled to considerable deference under AEDPA." *Id.* at 656. The PCR court found that Petitioner's verbal encouragement to Flores was conduct falling within the definition of

accomplice. (Doc. 16-1 at 27 (citing Ariz. Rev. Stat. § 13-301(1)–(2)).) Petitioner does not explain why that determination is objectively unreasonable. He thus has not overcome the deference owed under AEDPA.

Judge Velasco found that the adjudication of Petitioner's claims was not unreasonable because there was evidence supporting accomplice liability beyond Ms. Aguayo's statement that Petitioner encouraged Flores. Petitioner objects to that finding, arguing that Arizona's accomplice statute requires the alleged accomplice to "aid . . . another person in planning or committing *the* offense," as opposed to "*an* offense." Use of the word "the," Petitioner argues, means that the prosecution was required to prove he intended to aid Flores in each individually charged crime. He asserts the prosecution failed to do so and instead relied improperly on an "overarching scheme" theory to secure the accomplice convictions.

Petitioner's objection is without merit, namely because it is based on outdated law. The principles of accomplice liability in Arizona, as they are now and were at the time of Petitioner's offense, are accurately stated above. Petitioner, however, relies on versions of the statutes and case law that were superseded in 2008 by statutory amendment. The Arizona Supreme Court concluded that, under the former statutes, an accomplice could not be convicted for offenses other than the one intended by the accomplice, even if the other offenses were a reasonably foreseeable result of the intended offense. *See State v. Phillips*, 46 P.3d 1048, 1056 (Ariz. 2002), *superseded by statute*, Ariz. Rev. Stat. §§ 13-301 (2008), 13-303 (2008). At the time of Petitioner's offense, though, Arizona law clearly contemplated that, if the alleged accomplice had the requisite intent for an offense (e.g., armed robbery), then the accomplice may be criminally liable for all offenses that reasonably flow from that offense (e.g., aggravated assault). As explained above, a rational jury could conclude that Petitioner was an accomplice, and the PCR court's decision that sufficient evidence supports the jury verdict was not objectively unreasonable.

Petitioner advances a few other meritless arguments. First, he contends that Ms.

Aguayo's statement that he encouraged Flores was inadmissible hearsay. However, "[f]ederal habeas courts do not review questions of state evidentiary law," *Briceno v. Scribner*, 555 F.3d 1069, 1077 (9th Cir. 2009) (citation omitted), and "[e]rrors of state evidentiary law do not entitle one to federal habeas relief unless the alleged error so fatally infected the proceedings as to render them fundamentally unfair." *Gonzalez v. Knowles*, 515 F.3d 1006, 1011 (9th Cir. 2008) (citation and internal quotation marks omitted). Petitioner offers no argument that the admission of hearsay rendered his trial fundamentally unfair, and, moreover, it is not clear from the record whether admission of the statement was error at all.

Second, he argues that the transcript of TPD's interview with Mr. Camargo was exculpatory evidence because Mr. Camargo did not state that Petitioner did any affirmative act in furtherance of the crime. That is one view of the evidence. A rational factfinder could also infer that the omission of Petitioner's statement was unintentional, which is perhaps a more reasonable view of the transcript in light of the fact that Mr. Camargo had a loaded firearm pointed at his head and his vehicle stolen only a short while before. Furthermore, other evidence presented at trial, such as Petitioner's attempts to influence the victims' testimony, could lead a rational factfinder to give less weight to the transcript than Petitioner does.

Third, Petitioner offers a series of assertions as to why he could not be convicted of various crimes (e.g., he could not have robbed Mr. Camargo of the vehicle because Mr. Camargo surrendered possession of the vehicle to Ms. Aguayo by fleeing). However, Petitioner is merely pressing his own view of the evidence without regard to what any other rational factfinder might conclude. All of his viewpoints are subject to "fairminded disagreement" and thus fail under § 2254. *Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015) (citing *Harrington v. Richter*, 562 U.S. 86, 101, 103 (2011)).

Finally, Petitioner argues that he could be convicted of armed robbery under Ariz. Rev. Stat. § 13-1904 only if the prosecution proved he was armed with or used a deadly weapon. His argument rests on a misreading of the statute, however, and is therefore

unpersuasive.

The Court agrees with the Report and Recommendation that Petitioner has failed to make the substantial showing required to overturn the PCR court's decision on his *Jackson* claims. Therefore, Petitioner's objections will be overruled, and this part of the Report and Recommendation will be adopted.

### C. Ground Five

#### 1. Standard of Review

The clearly established federal law that governs Petitioner's ineffective-assistance-of-counsel claim in Ground Five is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a convicted defendant asserting a claim of ineffective assistance of counsel must show both deficient performance and prejudice. *Id.* at 687. To establish deficient performance, the defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. When reviewing a state court's adjudication of a *Strickland* claim, a federal habeas court's review is "doubly deferential" because "*Strickland* instructs courts to review a defense counsel's effectiveness with great deference, and AEDPA requires federal courts to defer to the state court's decision unless its application of Supreme Court precedent was objectively unreasonable[.]" *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal citations omitted). This doubly deferential standard is applied to the "last reasoned decision" by the state court. *Id.*

#### 2. Background

While Petitioner's vehicle-theft case was ongoing, Petitioner was a defendant in a separate criminal proceeding in which he was charged with theft of means of transportation, fleeing from law enforcement, endangerment, and resisting arrest (the "2008 case"). (Doc. 40-1.) Petitioner resolved the 2008 case by entering into a plea agreement. (Doc. 40-2.) The plea agreement provided:

> The defendant also admits he has previously been convicted of ARMED ROBBERY, BURGLARY FIRST DEGREE NON-RESIDENCE, AGGRAVATED ASSAULT, DEADLY WEAPON/DANGEROUS

INSTRUMENT, ESCAPE FROM CUSTODY, UNLAWFUL USE OF TRANSPORTATION . . . . Defendant further admits that the prior convictions . . . are Dangerous Nature priors for the purposes of enhancement.

. . . .

5. Defendant agrees that his admission as to prior convictions in this case can be used in [the vehicle-theft case] as if the same priors had been proven to the Court.

(*Id.* at 1–2.)

The armed robbery, first-degree burglary, aggravated assault, and unlawful use of transportation convictions occurred on the same "occasion" and thus, under Arizona law, could be treated only as a single conviction for sentencing purposes. (*See* Doc. 16-1 at 29–30); Ariz. Rev. Stat. § 13-704(J) (2010). Although the escape conviction could be counted separately because it occurred several hours later on a separate "occasion," that offense is still a non-dangerous felony. (*See* Doc. 16-1 at 30; Doc. 34-5 at 6.) Thus, for sentencing enhancement purposes, Petitioner had only one dangerous felony conviction.

In the vehicle-theft case, the trial court found, based on Petitioner's admission, that Petitioner was previously convicted of two or more prior dangerous felonies. (*See* Doc. 34-3 at 3.) Petitioner's sentences in the vehicle-theft case were enhanced pursuant to Ariz. Rev. Stat. § 13-704(E) (2010) based on that finding. He received a total sentence of 35 years.[7] Had Petitioner received the same combination of consecutive and concurrent sentences with the same minimum and presumptive terms, but with only *one* dangerous felony, he would have been sentenced to 21.25 years. *See* Ariz. Rev. Stat. § 13-704(D) (2010). Petitioner's counsel did not raise any objection during Petitioner's sentencing hearing; rather, he argued for the minimum sentence of 21 years on Petitioner's armed robbery conviction, evidencing his belief that Petitioner was subject to

---

[7] Petitioner received the presumptive term of 20 years for one aggravated assault charge. (Doc. 34-3 at 3.) Petitioner received a consecutive minimum term of 15 years on the second aggravated assault charge. (*Id.* at 4.) His longest sentence, 28 years for armed robbery, was eclipsed by the shorter consecutive sentences. (*See id.* at 5.)

- 15 -

an enhanced sentence based on two dangerous felony convictions. (*See* Doc. 34-2 at 11–13); Ariz. Rev. Stat. § 13-704(E) (2010).

### 3. Analysis

Petitioner argues that, although he admitted to having multiple dangerous nature convictions in his plea agreement, he never agreed that the trial court could treat those convictions separately for enhancement purposes. Furthermore, he argues, since his dangerous nature convictions occurred on the same "occasion," the trial court should not have enhanced his sentence based on two dangerous felonies, and his counsel was deficient by allowing the trial court to do so without objection.

The last reasoned decision was issued by the PCR court, which rejected Petitioner's claim because "this sentencing scheme was discussed and agreed upon by all counsel and the Petitioner at trial." (Doc. 16-1 at 29.) The PCR court then found that Petitioner's escape conviction occurred on a separate "occasion" and thus was properly treated as a separate conviction for sentencing purposes. (*Id.* at 30.) The PCR court did not analyze why it was proper to treat the escape conviction as a dangerous felony. (*See id.* at 29–30.)

Judge Velasco found that an evidentiary hearing is warranted because Petitioner has a colorable *Strickland* claim. Judge Velasco analyzed the plea agreement and the transcript of the change-of-plea hearing in the 2008 case and agreed that, while Plaintiff admitted the existence of multiple dangerous felonies, Plaintiff did not affirmatively agree that those dangerous felonies could be separated for enhancement purposes. Judge Velasco also found that the trial court did not inform Plaintiff that the effect of the plea agreement was to subject Petitioner to an enhancement for two dangerous felonies. Thus, Judge Velasco reasoned, Petitioner's claim may have merit because an unlawfully enhanced sentence constitutes sufficient prejudice under *Strickland*, and, if the sentence is illegal, the silence of Petitioner's counsel at sentencing was objectively unreasonable since it resulted in the illegal sentence.

Respondents object, arguing that the PCR court's determination rests entirely on a

determination of a state-law sentencing issue, and that the Report and Recommendation inappropriately undertook a review of that determination. They further contend that the result should not change merely because Petitioner frames the issue in terms of effectiveness of counsel.

The Court disagrees with Respondents' characterization of the Report and Recommendation. In rejecting Petitioner's claim, the PCR court relied on the parties' purported agreement to the sentencing scheme, not on a determination of an issue of state sentencing law. Determining whether Petitioner may have been prejudiced by his counsel's failure to object at the sentencing hearing required an examination of not only the record, but the Arizona sentencing statutes in order to determine how they might have applied were there a proper objection. That examination does not turn the Report and Recommendation into an improper inquiry into state-law issues. Respondents' objection will be overruled.

### 4. Evidentiary Hearing

The Court agrees with Judge Velasco that Petitioner has raised a colorable *Strickland* claim. A Rule 32 petitioner "is entitled to an evidentiary hearing when he presents a colorable claim." *State v. Watton*, 793 P.2d 80, 85 (Ariz. 1990). Ineffective-assistance-of-counsel claims in particular typically "cannot be advanced without development of facts outside the record." *United States v. Hanoum*, 33 F.3d 1128, 1131 (9th Cir. 1994). Although Petitioner presented a colorable claim for ineffective-assistance-of-counsel, the PCR court rejected his claim without allowing evidentiary development. (*See* Doc. 16-1 at 24 (finding that Petitioner "failed to raise a material issue of fact or law which would entitle him to a hearing").)

"[W]here a state court makes factual findings without an evidentiary hearing or other opportunity for the petitioner to present evidence, 'the fact-finding process itself is deficient' and not entitled to deference" under AEDPA. *Hurles v. Ryan*, 752 F.3d 768, 790 (9th Cir. 2014) (internal quotation omitted); *see also Nunes v. Mueller*, 350 F.3d 1045, 1055 (9th Cir. 2003). In light of the record that was before the state court, it was

objectively unreasonable under 28 U.S.C. § 2254(d)(2) for the state court to reject Petitioner's *Strickland* claim as factually unsupported without holding an evidentiary hearing.

If a federal habeas court determines, considering only the evidence that was before the state court, that the state court's decision was unreasonable under 28 U.S.C. § 2254(d)(1) or (d)(2), the court "evaluate[s] the claim de novo" and "may consider evidence properly presented for the first time in federal court." *Hurles*, 752 F.3d at 778. In such a scenario, the Court is no longer limited to consideration of the evidence in the state-court record. *Johnson v. Finn*, 665 F.3d 1063, 1069 n.1 (9th Cir. 2011).

AEDPA limits district courts' authority to hold evidentiary hearings in § 2254 cases where the petitioner "has failed to develop the factual basis of a claim in State court proceedings." 28 U.S.C. § 2254(e)(2). However, in cases where the petitioner has *not* failed to develop the factual basis of the claim in state court, the restrictions of Section 2254(e)(2) are inapplicable. *See Hurles*, 752 F.3d at 791. "A petitioner who has previously sought and been denied an evidentiary hearing has not failed to develop the factual basis of his claim." *Id.*

When Section 2254(e)(2) is inapplicable, an evidentiary hearing is required if (1) the petitioner has shown his entitlement to an evidentiary hearing pursuant to *Townsend v. Sain*, 372 U.S. 293, 313 . . . (1963), and (2) the allegations, if true, would entitle him to relief." *Hurles*, 752 F.3d at 791. A petitioner is entitled to an evidentiary hearing under *Townsend* when "(1) the state court's factual determinations are not fairly supported by the record as a whole, and (2) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing." *Hurles*, 752 F.3d at 791.

Section 2254(e)(2) is inapplicable in this case because Petitioner has not failed to develop the factual basis of his claims in state court; Petitioner requested an evidentiary hearing in state court, and his request was denied. (Doc. 1-5 at 68); *see Hurles*, 752 F.3d at 791. Petitioner's allegations in Ground Five of the § 2254 Petition, if true, would entitle Petitioner to habeas relief. *Hurles*, 752 F.3d at 791. Because the state court made

factual determinations that are not supported by the record as a whole and it failed to afford a full and fair hearing on Petitioner's colorable constitutional claim, Petitioner is entitled to a hearing under the *Townsend* factors.

**IT IS ORDERED:**

1. Respondents' Objections (Doc. 36) are **overruled**. Petitioner's Objections (Doc. 37) are **overruled**. The Report and Recommendation (Doc. 35) is **accepted and adopted in full**.

2. This matter is referred to Magistrate Judge Bernardo P. Velasco pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for an evidentiary hearing and a report and recommendation.

3. The Federal Public Defender is **appointed** pursuant to 28 U.S.C. § 1915(e)(1) and 18 U.S.C. § 3006A(a)(2) to represent Petitioner in this matter. The Clerk of Court is directed to send a Notice of Electronic Filing of this Order to Keith Hilzendeger at Keith_Hilzendeger@fd.org.

Dated this 16th day of November, 2018.

_____
Honorable Rosemary Márquez
United States District Judge